STATE OF IOWA, Appellee, v. ALBERT OUSLEY, Appellant.

**Criminal law:** RAPE: CORROBORATION: EVIDENCE. One cannot be convicted of rape on the uncorroborated testimony of the person injured; that is the person against whom the assault was committed. But the testimony of the mother of a child assaulted does not come within the rule. Evidence in this prosecution for rape upon a three-year-old child is held to require submission of the charge and to support a verdict of guilty.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

MONDAY, JUNE 29, 1914.

APPEAL from a conviction of an assault with intent to commit rape.—*Affirmed.*

*J. B. Rush,* for appellant.

*George Cosson,* Attorney General; *John Fletcher,* Assistant Attorney General, and *Thomas J. Guthrie,* County Attorney, *George A. Wilson,* and *Ward C. Henry,* for the State.

WITHROW, J.—I. The defendant was indicted on the charge of an assault with intent to commit rape upon one Alma Pertillo, a female under the age of fifteen. Trial under the indictment resulted in a conviction of the crime charged, and from the judgment entered this appeal is taken. No errors of law are assigned, excepting as to the ruling on the motion to direct a verdict of not guilty at the conclusion of the testimony offered by the state, and in overruling the motion in arrest of judgment and for a new trial. The single question presented by the appeal is as to the sufficiency of the evidence to sustain the verdict.

II. The defendant was sixteen years old at the time of the alleged crime, and the child upon whom it is charged he committed the assault was three years of age. The child, with her parents, lived in one part of a house, the other part being occupied by the defendant and his parents. The crime is alleged to have been committed on July 29, 1913, the evidence in support of it fixing the time at about two o'clock in the afternoon of that day. The evidence shows that the defendant was employed as a laborer by the Des Moines Packing Company, and on the day in question went to his home shortly before noon, not intending to work that afternoon. At the time the mother of Alma Pertillo was ill, and when the defendant with a companion came to the house, the child was asleep. Shortly afterwards she wakened and began to cry, upon which, according to the testimony of the mother, the defendant said, "Come on, Alma, I will take you out and give you some pop and shake you to sleep." At the time she was barefooted, had on a short dress, and no underwear. He took her out on the front porch, and rocked her, the mother at the time lying in bed, and, as she claims, within hearing distance of the others. She testified that the defendant said the child would not go to sleep, following which all was quiet for a time. The mother, missing the sounds of conversation, called the child, who came running from a room in the Ousley part of the home, seemingly much frightened, and trembling. The child said to her mother, "Wipe me." The latter testified that she took up the child and found that she was wet between the legs; that she then called twice to the boy, and also to his mother, and when she called the defendant hoisted a window and jumped out of their back bedroom; that she saw him run across the street and sit down under a tree with another boy. The mother further testified that with a Mrs. Harvey she examined the child and found her bruised and bloodshot. The mother further testified that the child said to her when she first ran into the room that he pulled her dress up. The father of the child testified that he was away from home at

the time, was sent for, and that when he reached his home he found her, saw on her body a substance described by him as "all white, inflamed stuff, red streaks of blood." When he had left home that morning the child was apparently all right.

Dr. A. D. Price testified that he saw the child on the 3d of August, which was five days after the alleged assault; that she seemed to be suffering much pain in the abdomen, had high temperature, rapid pulse, and her privates were covered with a large amount of discharge. In the evening when he called again the suffering was greater; and the next morning he caused her to be removed to the hospital; that he made a microscopic examination of her and found the germs of gonorrhea. On the 10th day of August he saw the defendant in the county jail, made an examination of his privates, found that he had gonorrhea, and confirmed it later by a microscopic test. He also testified that in case of a young child the disease will appear in from three to seven days after contact.

On the part of the defense the evidence of Mrs. Harvey tended to show: That, when the defendant took the child on his lap, Prince McGruder, a companion, was with him. That when the defendant took her she stopped crying, and when he put her down he was sitting on the porch, in view of the mother. The witness says that when she heard the mother calling she came and examined the child at her request. She found no bruises, and that the child was not fretting, nor was she sick the next day. This witness, with others, also testified that the windows in the Ousley part of the house were nailed down, as tending to rebut the testimony that the defendant had raised a window and jumped through it. The defendant testified: That he was seated on the porch with McGruder, and that the child came to him and sat on his lap. That he endeavored to quiet her, during which time Mrs. Harvey came out and tried to get her to quit crying. That soon after the little girl went back into the house still crying. He testified that he did not go into the house after he put the child off

VOL. 166 IA.—39

of his lap, but went under the tree with McGruder. He denied pulling up her dress or making any assault upon her, and testified that he did not hear Mrs. Pertillo call him. McGruder testified in substance to the same facts, stating that he went out under the tree about five minutes before the defendant came; that he saw the child go in the house while the defendant was sitting on the porch, and does not know whether Ousley went in. The city physician testified that he was called, made an examination, and that he found no lacerations or torn places; his testimony as to her condition going no further than that.

III. This is the substance of the testimony. The dispute as to many material facts is sharp, the case of the state as to the acts and conduct of the defendant depending largely upon the testimony of the child's mother. It is urged that there was no corroboration as required by Code section 5488. That section provides that in cases such as is here presented the defendant cannot be convicted upon the testimony of the person injured, unless corroborated by other evidence tending to connect him with the commission of the offense. The person injured is the one against whom the assault is committed, who, as charged, was the child, and the testimony of the mother would not come within the rule of the statute. As to some material facts, there is little, if any, dispute in the evidence that the child, within such time after the alleged assault as would be material and probable, were the venereal disease communicated to her, showed its marked symptoms, and that the defendant within a very short time thereafter, when examined, was found to have the disease. Add to these facts the further testimony as to the condition of the child following the alleged assault, the appearance of her body, her manifestations of pain, and her declaration as to the conduct of the defendant, all of which is more or less in dispute, there was in the case such evidence as required its submission to the jury. It was for that body to pass upon the weight of the evidence in the case. While there is in it

much that passes understanding, in that it is hard to realize how a licentious nature would seek outlet upon a child almost a babe, yet in the face of the facts presented in the record, the determination of which was for the jury, we must rest the case upon its finding, holding that the evidence was such as to warrant the verdict.—*Affirmed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.